FILED IN MY OFFICE
DISTRICT COURT CLERK
8/14/2014 9:40:35 AM
GREGORY T. IRELAND
Shellene Romero

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT


THEODORE C. "TED" BACA, as
Personal Representative of the Wrongful
Death Estate of HILLARY ANN
JARAMILLO, deceased; GEORGIA
MARQUEZ, individually as mother of
decedent; MICHAEL R. JARAMILLO II,
individually as brother of decedent; and
MICHAEL R. JARAMILLO, individually
as father of decedent;

      Plaintiffs,


vs.                                                                 D-202-CV-2014-04981


AG EXPRESS TRANSPORTATION, INC.,
a Foreign Corporation; DIOSDADO
PASCUA, an individual; and JOHN DOES 1-
5, unknown entities and individuals;

      Defendants.


### COMPLAINT FOR WRONGFUL DEATH AND OTHER DAMAGES

Plaintiffs, by and through their undersigned attorneys, the Law Offices of Brad D. Hall, the Davis Law Firm, LLC (Ben Davis), and Ed Chavez, Jr., hereby file this Complaint for Wrongful Death and Other Damages. The three attorneys are co-counsel for the Estate. Mr. Hall and Mr. Davis also represent the mother and brother of the decedent for their individual claims. Mr. Chavez also represents the father of the decedent for his individual claims.

### PARTIES AND VENUE

1. On August 12, 2014, the Second Judicial District appointed a Personal Representative for the Wrongful Death Estate of Hillary Ann Jaramillo pursuant to NMSA 1978,

Section 41-2-3.  Hillary Ann Jaramillo, on July 14, 2014, was the victim of the negligent, reckless choices, actions, and inactions of the Defendants and potentially the John Does 1-5 described more fully below.  Plaintiff Baca is a duly licensed New Mexico attorney in New Mexico and Bernalillo County, and is a resident of Bernalillo County. Plaintiff Baca is familiar with the obligations and duties owed by a Personal Representative under the Wrongful Death Act and is particularly well suited to meet the demands of the Personal Representative in this case.

2. Upon appointment by the Second Judicial District Court as Personal Representative of the Wrongful Death Estate of Hillary Ann Jaramillo, Plaintiff Baca is the only person with the authority to file an action on behalf of the Wrongful Death Estate of Hillary Ann Jaramillo.  *See In the Matter of the Estate of Kirsten Sumler,* 2003-NMCA-30, 62 P.3d 766.

3. Plaintiff Georgia Marquez is an individual residing in Cibola County, New Mexico.  Plaintiff Marquez is the mother of Hillary Ann Jaramillo, deceased.  At the time of her daughter's death, Hillary lived with her mother, Plaintiff Marquez, and her brother.  Plaintiff Marquez is asserting a loss of consortium claim arising from the Defendants' choices, actions, and inactions described more fully below.

4. Plaintiff Michael R. Jaramillo II is a 19 year old individual residing in Cibola County, New Mexico.  He is the brother of Hillary Ann Jaramillo, deceased. At the time of his sister's death, Hillary lived with her mother and brother.  Plaintiff is asserting a loss of consortium claim arising from the Defendants' choices, actions, and inactions described more fully below.

5. Plaintiff Michael R. Jaramillo is an individual residing in Cibola County, New Mexico.  He is the father of Hillary Ann Jaramillo, deceased. At the time of his daughter's death, Plaintiff had a close relationship with her. Plaintiff is asserting a loss of consortium claim arising from the Defendants' choices, actions, and inactions described more fully below.

6.      AG Express Transportation, Inc. ("AG Express") is a California corporation operating and maintaining commercial trucks and trailers as a commercial motor vehicle carrier. Defendant AG Express can be served with process through its corporate agent, Israel Vargas, located at 7553 Carmelo Ave., Tracy, California 95304.  At all material times hereto, Defendant AG Express is responsible for the choices, actions, and inactions of its agents and employees including, but not limited to, Defendant Diosda Pascua and John Does 1-5.  Further, as more fully described below, Defendant AG Express is responsible for its own choices, actions, and inactions including, on information and belief, the negligent supervision of Defendant Diosda Pascua and, on information and belief, negligent maintenance of its tractors and trailers.

7.      Defendant Diosda Pascua, on information and belief, is a commercial motor vehicle driver and the individual who operated a tractor and trailer owned and maintained by Defendant AG Express on July 14, 2014, in New Mexico.  Defendant Pascua was operating Defendant AG Express' tractor and trailer in the course and scope of his employment for Defendant AG Express on July 14, 2014.   Accordingly, Defendant AG Express is responsible for all of Defendant Pascua's actions and in actions pursuant to the doctrine of *respondeat superior*.

8.      John Does 1-5 are, on information and belief, the individuals and entities who may have been responsible for maintaining Defendant AG Express' tractor and trailer involved in the July 14, 2014 crash.

9.      The fatal crash giving rise to this Complaint occurred in Cibola County, State of New Mexico.

10.     Jurisdiction and venue are proper in this Court pursuant to NMSA 1978 Section 38-3-1.

**FACTUAL ALLEGATIONS**

11. A commercial motor vehicle driver must never drive while he is fatigued. Commercial driver fatigue is one of the leading causes for the more than 3000 commercial motor vehicle deaths that occurred in 2012 throughout the United States.

12. To combat this known, fatal safety risk, commercial drivers are required to strictly comply with a variety of federal rules and regulations to protect the motoring public from harm. These include, but are not limited to, the following hours of service rules and regulations:

- 11 Hour Driving Limit;

- 14 Hour On-Duty Limit (No Driving after 14th Hour of Coming On-Duty)

- 60/70 Hours On-Duty Limit (May not drive after hitting 60 Hours for 7 Consecutive Days or 70 Hours for 8 Consecutive Days. The driver can restart the 7/8 day period after 34 consecutive hours of rest including two days of sleep from 1 a.m. to 5 a.m. (based on the home terminal time));

- 30-Minute Break During First 8 Hours of a Shift.

13. A commercial motor carrier must also properly supervise and dispatch their drivers to ensure that their commercial drivers are never in a position to drive fatigued or violate any hours of service regulations.

14. In addition to protecting against fatigue, commercial drivers and motor vehicle carriers must (or cause) systematically inspect, repair, and maintain their tractors and trailers to keep them in safe and proper operational condition at all times. This includes all parts and accessories that may affect safety of operation including suspension systems, axles and attaching parts, and steering systems.

15. Of course, a commercial driver and motor vehicle carrier must never operate a tractor or trailer in such a manner as to likely cause a collision or breakdown of the vehicle.

4

Before driving, a commercial driver must ensure the tractor and trailer are in good working operation.

16. To protect against a collision or breakdown of a tractor or trailer while on the road, all motor vehicle carriers must require their drivers to (and the driver must) inspect their tractor and trailer at the end of each day to ensure that the tractor and trailer are in safe and proper working order.

17. In the early morning hours of July 14, 2014, Defendant Pascua was heading eastbound on I-40 in Defendant AG Express' tractor and trailer.

18. Although the federal motor carrier regulations recognized that a commercial truck driver's most critical rest period is from 1:00 a.m. to 5:00 a.m., Defendant AG Express and Defendant Pascua, on information and belief, chose to "push on" and, around 2:00 a.m., Defendant Pascua was operating the tractor and trailer near Exit 104 on Interstate 40, east of Acoma Pueblo and Sky City, New Mexico.

19. Further, on information and belief, Defendant AG Express' tractor and/or trailer was not in safe and proper working order as Defendant Pascua drove in the middle of the night with a full load on Interstate 40.

20. Coming downhill heading east on I-40 towards the Exit 104 overpass with a heavy load of produce, the inevitable happened: Defendant Pascua, on information and belief, fell asleep at the wheel and/or AG Express's tractor's mechanical operating systems failed because they were not properly repaired, maintained, and inspected.

21. The tractor and trailer, without control from Defendant Pascua and/or without the ability for Defendant Pascua to control it, veered into the guardrail protecting vehicles from the median, and continued rubbing along the guardrail until the guardrail ended. Then, without a

fixed object to maintain its course and/or input from Defendant Pascua, the tractor trailer drove into the median and headed directly into the westbound lanes of I-40.

22. Defendant Pascua should have applied the brakes and/or use a lower gear to slow the tractor trailer after either waking up and/or discovering the preventable mechanical failure of the AG Express' tractor trailer.  Instead, on information and belief, Defendant Pascua chose to bow his head and pray as his fully loaded tractor trailer headed directly toward the westbound lanes of I-40.

23. Near the same time, Hillary Ann Jaramillo was travelling westbound on I-40 heading towards her home in Grants, New Mexico.

24. The tractor trailer then crashed through the guardrail into the westbound lanes of traffic.  The truck and trailer struck Hillary Ann Jaramillo's vehicle pinning her vehicle and Ms. Jaramillo to the other guardrail and trapping her inside her vehicle.

25. Eventually, a fire erupted, engulfing Ms. Jarmaillo's vehicle and Defendant AG Express' tractor trailer in flames.

26. John Does 1-5, on information and belief, may have been responsible for the repair and maintenance of Defendant AG Express' tractor.

27. As a result of the Defendants' choices, actions and inactions, Hillary Ann Jaramillo lost her life, and all Plaintiffs were harmed.

### COUNT I
### NEGLIGENCE

28. Plaintiffs hereby incorporate all previously alleged paragraphs as though set forth fully herein.

29. It is the duty of every commercial driver to exercise ordinary care, at all times, to prevent a collision.

30. It is the duty of every commercial driver, at all times, to keep a proper lookout so as to avoid placing others in danger and to prevent a collision.

31. It is the duty of every commercial driver, at all times, to maintain proper control and speed of their vehicle so as to avoid placing others in danger and to prevent a collision.

32. It is the duty of every commercial driver, at all times, to never "push on" or drive their tractor trailer while fatigued.

33. It is the duty of every commercial driver to never operate a tractor or trailer in such a manner as to likely cause a collision or breakdown of the vehicle.

34. It is the duty of every commercial driver to ensure the tractor and trailer are in good working order before driving.

35. It is the duty of every commercial driver to inspect their tractor and trailer at the end of each driving day.

36. It is the duty of every commercial motor vehicle carrier to systematically inspect, repair, and maintain their tractors and trailers to keep them in safe and proper operational condition at all times.

37. It is the duty of every motor vehicle carrier, at all times, to supervise their commercial drivers to ensure compliance with federal hours of service regulations and never place their drivers in a position where they have no choice but to violate the hours of service regulations.

38. To the extent a third-party was responsible for maintenance, Defendants John Does 1-5 owed a duty to use ordinary care in repairing and maintaining Defendant AG Express' tractors and trailers.

39. Defendants breached their duties as more fully described above.

40. As the direct, sole, and proximate cause of those breaches, decedent Hillary Jaramillo lost her life and suffered damages as set forth below.  In addition, the individual Plaintiffs also suffered damages as described more fully below.

41. The Defendants' choices and conduct, on information and belief, were willful, wanton, and reckless entitling Plaintiffs to an award of punitive damages.

## COUNT II
## NEGLIGENCE *PER SE*

42. Plaintiffs hereby incorporate all previously alleged paragraphs as though set forth fully herein.

43. Defendants' choices and conduct were in violation of existing laws, statutes and regulations.

44. Plaintiffs are members of the class these laws, statutes and regulations were designed to protect, and the harm suffered by Plaintiffs is the type of harm these laws, statutes and regulations seeks to prevent.

45. As a direct and proximate result of Defendants' violation of the laws, statutes and regulations, Plaintiffs suffered damages as set forth below.

46. The Defendants' choices and conduct, on information and belief, were willful, wanton, and reckless, entitling Plaintiffs to an award of punitive damages.

## DAMAGES

47. Plaintiffs hereby incorporate all previously alleged paragraphs as though set forth fully herein.

48. As a direct and proximate result of the choices and conduct of the Defendants, described above, the Estate of Hillary Ann Jaramillo, as represented by her Court-appointed Personal Representative, is entitled to recover damages against Defendants as follows:

- The reasonable expenses of necessary medical care and treatment, funeral and cremation of Hillary Ann Jaramillo;

- The pain and suffering experienced by Hillary Ann Jaramillo between the time of injury and death;

- The lost earnings, the lost earning capacity and the value of lost household services of Hillary Ann Jaramillo;

- The value of Hillary Ann Jaramillo's life apart from her earning capacity; and

- The aggravating circumstances attending the wrongful acts, neglect and/or default of the Defendants as alleged.

49. As a direct and proximate result of the conduct of the Defendants, described above, Plaintiff Marquez, is entitled to recover loss of consortium damages resulting from the loss of her daughter in an amount to be determined at trial.

50. As a direct and proximate result of the conduct of the Defendants, described above, Plaintiff Michael R. Jaramillo II, age 19, is entitled to recover loss of consortium damages resulting from the loss of his sister in an amount to be determined at trial.

51. As a direct and proximate result of the conduct of the Defendants, described above, Plaintiff Michael R. Jaramillo, is entitled to recover loss of consortium damages resulting from the loss of his daughter in an amount to be determined at trial.

52. Defendants' choices and conduct, on information and belief, were willful, wanton, and reckless, entitling Plaintiffs to an award of punitive damages.

**WHEREFORE**, Plaintiffs request judgment against Defendants in an amount sufficient to compensate Plaintiffs for:

A. Damages (including punitive damages) as alleged in this complaint in an amount to be ascertained at trial;

9

B.   Costs incurred in this litigation;

C.   Prejudgment and post-judgment interest; and

D.   Any other relief which this Court may deem just and proper.

**LAW OFFICES OF BRAD D. HALL**

/s/ Brad D. Hall 08/14/14
Brad D. Hall
320 Gold Av SW #1218
Albuquerque, NM 87102
(505) 255-6300, 255-6323 Fax
brad@bhallfirm.com

and

Edward Chavez, Jr.
800 Lomas Blvd NW #100
Albuquerque, NM 87102
(505) 243-5900, 243-5910 Fax
chavezlaw@msn.com

and

The Davis Law Firm, LLC
Ben Davis
111 Tulane Dr SE
Albuquerque, NM 87106
(505) 750-8742, 559-4808 Fax
bdavis@tdlf-law.com